IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-1189-WJM-NYW

CIBER, INC.,

    Plaintiff,

v.

ACE AMERICAN INSURANCE COMPANY,

    Defendant.

## ORDER ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS

Plaintiff Ciber, Inc. ("Ciber") brings this action against Defendant ACE American Insurance Company ("ACE") asserting claims for declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, unreasonable delay or denial of benefits, and punitive damages. (ECF No. 37-1 ¶ 7.) All claims arise from ACE's refusal to provide Ciber with a defense in a previous lawsuit. (*Id*. ¶¶ 18, 60; ECF No. 40 ¶¶ 18, 60.)

This matter is before the Court on the Parties' Cross-Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, in which the Parties dispute coverage for the underlying lawsuit, thus affecting ACE's duty to defend. (ECF Nos. 47, 48.) For the reasons set forth below, Defendant ACE's Motion for Judgment on the Pleadings (ECF No. 47) is granted and Plaintiff Ciber's Motion for Judgment on the Pleadings (ECF No. 48) is denied.

## I. BACKGROUND

### A. The New Orleans Action[1]

In 2007, Active Solutions, LLC and Southern Electronics Supply, Inc. (hereinafter "Active-Southern") initiated an action in Louisiana state court against Ciber and other defendants, asserting: breach of contract, tortious interference, unfair trade practices, promissory estoppel/detrimental reliance, exemplary damages, civil conspiracy, and unjust enrichment. (ECF No. 37-6 at 20–36.)

The factual allegations in Active-Southern's "Fourth Amended and Supplemental Petition" stem from a 2003 "shootout at a car wash in New Orleans." (*Id*. at 6.) The shootout was captured on videotape by a privately-owned surveillance camera, the footage was given to law enforcement, and was subsequently used as a critical tool in their pursuit of the alleged suspects. (*Id*.) As a result, the Mayor of New Orleans issued a request for proposal ("RFP") to the private sector, inviting bids to develop and implement a wireless surveillance system that could "provide realtime coverage of the immediate areas where the cameras were placed to the local district police stations." (*Id*.) Active-Southern collaborated to develop a prototype surveillance system and was "selected as the winning responsive bidder [receiving] the contract to install the cameras" ("July 2004 Contract"). (*Id*. at 7.) The July 2004 Contract "specified that a

---

[1] The facts related to the New Orleans Action are drawn from Exhibit E to Ciber's Second Amended Complaint. (ECF No. 37-6.) Exhibit E is a 2007 "Fourth Amended and Supplemental Petition" filed in Louisiana state court, specifically in the Orleans Parish Civil District. (*See id*. at 1.) As a public court record, the Court may take judicial notice of the 2007 Petition without converting the parties' respective motions into motions for summary judgment. *See Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006) ("facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment").

minimum of two hundred forty cameras would be purchased by the city during the term of the contract" and "the city agreed not to disclose [Active-Southern's] technology[.]" (*Id*.)

Active-Southern alleged that after the July 2004 Contract was executed, New Orleans city employees approached them and "communicated very clearly that they wanted their own private companies . . . to be employed as subcontractors under the contract." (*Id*. at 9.) Active-Southern declined this request. (*Id*.) However, Active-Southern further alleged that it was common practice for the Mayor's Office of Technology ("MOT") "to hire an outside contractor for the City's technology work . . . and then require that contractor to subcontract the work back to companies owned or managed by the city employees." (*Id*. at 9–10.) Ciber became the outside contractor hired by the MOT. (*Id*. at 10.) Active-Southern alleged that "Ciber . . . intentionally and in concert with the city employee defendants and their companies . . . set out to destroy [Active-Southern] by stopping the authorization of [Active-Southern's] work, failing to order cameras and failing to authorize payment for cameras such that the contract minimums would be maintained and the extensive research, testing and development costs could not be covered." (*Id*. at 11, 28.)

Active-Southern also alleged that Ciber and the other defendants shared confidential information regarding the surveillance system provided to them, and ultimately copied and manipulated the system. (*Id*. at 30, 35.) Active-Southern specifically alleged that the defendants "knowingly acted intentionally and in concert to conspire to (1) manufacture a copy of [Active-Southern's] system, (2) sell that system to

Dell, who would relabel it 'networking equipment'. . . [and] (3) illegally sell that system [throughout Louisiana]." (*Id*. at 35.)

Ultimately, Ciber and Active-Southern settled. (ECF No. 54 at 10.)

**B.     The Baton Rouge Action[2]**

In 2009, Camsoft Data Systems, Inc. ("Camsoft") initiated an action in Louisiana state court naming as defendants Ciber, Active-Southern, and several of the other defendants named in the New Orleans Action. (ECF No. 37-4 at 3–4.)[3] Camsoft asserted claims for: "conspiracy to commit intentional torts, including fraud, tortious interference with contract, and conversion of Camsoft's confidential business information," violation of Louisiana's Uniform Trade Secrets Act, conspiracy to violate Louisiana's Antitrust Act, and conspiracy to violate Louisiana's Unfair Trade Practices Act. (*Id*. at 16–27.)

Camsoft alleged that Active-Southern approached Camsoft and asked if it "would be interested in joining [them] to develop a wireless surveillance system for" their RFP bid. (*Id*. at 5.) Thus, Camsoft asserted that it was part of the team that developed the surveillance system for the City of New Orleans. (*Id*. at 5–6.) However, Camsoft

---

[2] The facts relating to the Baton Rouge Action are drawn from Exhibit C to Ciber's Second Amended Complaint. (ECF No. 37-4.) Exhibit C is a 2009 "Master Petition for Declaratory Judgment" filed in Louisiana state court, specifically in the Parish of East Baton Rouge. (*See id*. at 1.) Just as the Court did with the 2007 Petition, the Court takes judicial notice of the 2009 Master Petition without converting the parties' respective motions into motions for summary judgment. *See Tal*, 453 F.3d at 1265 n.24.

[3] The Baton Rouge Action was subsequently removed to federal court; however, the Fifth Circuit Court of Appeals concluded on appeal that subject-matter jurisdiction did not exist, thus the action was remanded to state court, placing "the case back into its initial stages." (ECF No. 37-1 ¶¶ 26–28; ECF No. 40 ¶¶ 26–28.) "Following remand, on February 10, 2015, Camsoft filed its Master Petition" in the Baton Rouge Action. (ECF No. 37-1 ¶ 29; ECF No. 40 ¶ 29.)

4

alleged that prior to Active-Southern winning the July 2004 Contract, Active-Southern had a "secret dinner meeting" with city-employee defendants (the same defendants alleged in the New Orleans Action) and entered into a "kickback contract" whereby the city-employees would ensure that Active-Southern would win the city's contract in exchange for the city employee defendants taking over Camsoft's "wireless network integrator role on both the New Orleans project, as well as all future crime camera system sales outside of New Orleans[.]" (*Id*. at 6–7.)

As for Ciber's participation, Camsoft alleged that "the city defendants entered into another similar kickback contract with Ciber" in which Ciber agreed to steer additional subcontractor work to city employee controlled companies. (*Id*. at 8–9.) Accordingly, Camsoft alleged that "Ciber and its subcontractors *(i.e.*, the city [employee] defendants) engaged in the knowing misappropriation and theft of Camsoft's confidential technical and business information." (*Id*. at 10.)

**C.    Tender of Defense to ACE**

On October 15, 2015, Ciber provided notice to ACE—its insurer—of the Baton Rouge Action and informed ACE that it believed it was entitled to indemnification for any liability. (ECF No. 37-1 ¶ 42; ECF No. 40 ¶ 42.) Despite Ciber's demand, on January 27, 2016, ACE wrote to Ciber "concerning its denial of coverage, including any obligation to defend[.]" (ECF No. 40 ¶ 60; *see* ECF No. 37-1 ¶ 60.) According to ACE, the policy only provided coverage for those claims first made during the policy period, which "incepted on July 1, 2009." (ECF No. 40 ¶¶ 111, 154.) Because, as ACE contends, the claim serving as the basis for the Baton Rouge Action was first made in

5

2007 (the year in which the New Orleans Action was commenced), prior to the inception of the subject policy, the Baton Rouge Action did not trigger coverage. (*Id*. ¶¶ 146, 155.)

**D.     The Policy**

ACE issued a claims-made[4] Digital and Technology Professional Liability Insurance Policy to Ciber, which was effective from July 1, 2009 to July 1, 2010 (the "Policy"). (ECF No. 37-2.) The Policy provides coverage for liability stemming from technology and internet errors and omissions, electronic media activities, and network operations security. (*Id*. at 3.) The Policy has a maximum $20,000,000 aggregate limit of liability. (*Id*. at 4.)

Under the Policy, ACE will provide coverage to Ciber for claims made against Ciber during the coverage period. (*Id*. at 6.) A "claim" means "a civil proceeding against any insured seeking monetary damages[.]" (*Id*. at 7.) The Policy provides, however: "[a]ll claims arising out of the same wrongful act and all *interrelated wrongful acts* of the insureds shall be deemed to be one claim, and such claim shall be deemed to be first made on the date the earliest of such claims is first made, regardless of whether such date is before or during the policy period." (*Id*. at 18 (emphasis added).) In other words, if more than one claim involving interrelated wrongful acts is made against Ciber, the multiple claims are considered a single claim made on the date on

---

[4] A claims-made policy "confers coverage for claims presented during the policy period." *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo. 2007); *see also* 7 Steven Plit et al., *Couch on Insurance* § 102:22 (3d ed., Dec. 2016 update) ("A pure claims-made policy provides coverage for claims made during the policy period regardless of when the events out of which the claim arose occurred. In contrast, an occurrence policy provides coverage for all occurrences which take place during a policy period regardless of when the claim is made.").

which the earliest of the claims was made. The Policy expansively defines "interrelated wrongful acts" as "all wrongful acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." (*Id*. at 9.)

**E.     The Instant Action**

As a result of ACE's refusal to defend Ciber against the Baton Rouge Action or otherwise provide coverage, Ciber filed the instant action against ACE seeking, in part, a declaratory judgment stating "(1) the Policy provides coverage for the [Baton Rouge Action], (2) ACE has a duty to reimburse Ciber for defense costs and fees incurred in defending the [Baton Rouge Action], (3) ACE . . . breached its duty of good faith and fair dealing under the Policy, (4) ACE's conduct . . . constituted a breach of contract, and (5) ACE's refusal to defend precludes ACE from denying coverage under the Policy." (ECF No. 37-1 at 17.)

On October 13, 2016, ACE filed an Answer and Counterclaim, seeking a contrary declaration, that "the Policy affords no coverage, including for any defense obligation, for Ciber's insurance claims relating to the Baton Rouge [Action], and that ACE is not liable for breach of the duty of good faith and fair dealing, or for unreasonably delay or denial of benefits[.]" (ECF No. 40 at 28.) On November 14, 2016, Ciber filed an Answer to ACE's counterclaim. (ECF No. 43.)

On November 30, 2016, ACE filed its Motion for Judgment on the Pleadings, requesting that the Court dismiss all claims against it with prejudice and enter judgment in its favor. (ECF No. 47.) Ciber responded on January 6, 2017 (ECF No. 54), and ACE replied on January 18, 2017 (ECF No. 56).

On December 9, 2016, Ciber filed its Motion for Judgment on the Pleadings, also requesting judgment in its favor. (ECF No. 48.) ACE responded on December 23, 2016 (ECF No. 53), and Ciber replied on January 6, 2017 (ECF No. 55).

The Parties' Cross-Motions for Judgment on the Pleadings are now ripe for resolution.

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is evaluated under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009). Therefore, in ruling on a motion for judgment on the pleadings, courts look to the specific allegations of the complaint to determine whether they plausibly support a legal claim for relief—that is, a complaint must include "enough facts to state a claim for relief that is plausible on its face." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1236 (10th Cir. 2007); *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). The Court accepts as true the well-pled factual allegations of the opposing party and draws all reasonable inferences in its favor. *See Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

Further, a "motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Charles Alan Wright et al., *Federal Practice & Procedure* § 1367 (3d ed., Apr. 2017 update); *see also Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) ("Judgment

on the pleadings should not be granted unless the moving party clearly establishes that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."). In ruling on a motion for judgment on the pleadings, the Court may consider the Complaint, any material that is attached to the Complaint, and the Answer. *See Park Univ.*, 442 F.3d at 1244. Additionally, the Court may take judicial notice of state court documents. *Denver Health & Hosp. Auth. v. Beverage Distrib. Co., LLC*, 546 F. App'x 742, 747 n.3 (10th Cir. 2013).

### III. ANALYSIS

In this action, the Court is asked to decide, as a matter of law, whether the Policy provides coverage for the Baton Rouge Action, *i.e.*, was the Baton Rouge Action an "interrelated wrongful act" that was therefore not a claim first made within the Policy period? (*See* ECF No. 55 at 3 ("Counsel for both parties have previously agreed that resolution of the 'interrelated wrongful acts' dispute is at the core of this case[.]").) For the reasons discussed below, the Court finds that the Baton Rouge Action and the New Orleans Action are "interrelated wrongful acts," and accordingly ACE properly denied Ciber's request for coverage.

**A.  Colorado Law Applies**

The Court has diversity jurisdiction over this action. (*See* ECF No. 37-1 ¶ 3; ECF No. 40 ¶ 3.) Because this is a diversity action, the Court applies "the substantive law of the forum state, including its choice-of-law rules." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.,* 431 F.3d 1241, 1255 (10th Cir. 2005). Colorado is the forum state in this action, thus, under Colorado choice-of-law rules, an insurance contract is

governed by the law of the state with the most significant relationship to the insurance contract. *See Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. App. 1998) (citing *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979)). No party disputes that here, Colorado has the most significant relationship to the Policy because the Policy was entered into in Colorado and the insured's principal place of business is located in Greenwood Village, Colorado. (ECF No. 37-1 ¶¶ 1, 5); *see Wood Bros. Homes, Inc.*, 601 P.2d at nn.3–4 (listing factors to be taken into account to determine the state with the most significant relationship). Accordingly, Colorado law applies.

In interpreting insurance policies, Colorado courts "construe an insurance policy's terms according to principles of contract interpretation." *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004). "In interpreting a contract, we seek to give effect to the intent and reasonable expectations of the parties. Accordingly, unless the parties intend otherwise, terms in an insurance policy should be assigned their plain and ordinary meaning." *Thompson*, 84 P.3d at 501.

**B.     The Policy Language**

As noted above, the Policy broadly defines "interrelated wrongful acts" as "all wrongful acts that have as a *common nexus* any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." (ECF No. 37-2 at 9 (emphasis added).) The parties disagree as to how this provision should be further defined and applied.

Ciber maintains that "the dictionary's primary definition [of nexus] is 'a causal

10

link' [and that] courts construe this causation requirement to include both but-for cause and proximate cause[.]" (ECF No. 54 at 4; *see also* ECF No. 48 at 9 (stating Black's Law Dictionary definition of "nexus" includes "a connection or link, often a causal one").) Ciber argues that "[s]everal courts have followed [this causation] approach in denying insurance carriers' attempts to limit coverage under interrelated wrongful act provisions." (ECF No. 48 at 11 (citing *Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 185 F.3d 875 (table), 1999 WL 420401, at *1 (10th Cir. 1999); *Morden v. XL Specialty Ins.*, 2016 WL 1337252, at *9–10 (D. Utah Apr. 5, 2016); *Prof'l Solutions Ins. Co. v. Mohrlang*, 2009 WL 321706, at *11 (D. Colo. Feb. 10, 2009)).) Lastly, Ciber contends that "[b]ecause there is no causal link between all claims in the [New Orleans Action] and those in the [Baton Rouge Action], there is a possibility of coverage, leaving ACE with a duty to defend." (ECF No. 54 at 4.)

ACE, however, maintains that the "common factual nexus" standard requires at most "only a 'substantial overlap' between the factual allegations in the two matters." (ECF No. 56 at 5 (citing *Nomura Holding America, Inc. v. Federal Ins. Co*, 45 F. Supp. 3d 354, 370 (S.D.N.Y. 2014) (factual nexus requires specific overlapping facts, but does not require that the claims involve precisely the same parties, legal theories, wrongful acts, or requests for relief)).) ACE argues that the Court should "decline Ciber's invitation to amend [the Policy] to require 'but-for' causation." (ECF No. 56 at 3.)[5] ACE

---

[5] Although ACE argues that the "'causation test' is inapplicable," ACE goes on to argue that the "but-for" test would be satisfied because the New Orleans Action "did indeed bring about the claims in the Baton Rouge" Action. (ECF No. 53 at 8.) ACE points to ¶ 120 of the Baton Rouge Master Petition, in which Camsoft asserts it is seeking a "declaratory judgment declaring its ownership rights over all economic fruits derived from the Active-Southern defendants' subsequent use and sales of Camsoft's crime camera system, as well as those

11

points out that the "problem with Ciber's 'but-for' standard is that it would require the Court to rewrite the Policy, which Colorado law forbids." (*Id*. at 4.)  ACE further contends that the authority cited in Ciber's brief does not support imposing a "but-for" test.  (*Id*.)  ACE distinguishes both *Stauth* and *Morhlang*, noting that the policy in *Stauth* specifically defined "interrelated wrongful acts . . . as . . . causally connected wrongful acts" and the policy in *Morhlang* "defined related acts or omissions as those which are temporally, logically, or causally connected." (ECF No. 53 at 9 (internal quotation marks and citations omitted); ECF No. 56 at 4 (internal quotation marks and citations omitted).)

The Court agrees with ACE.  Looking at the plain language of the term "interrelated wrongful acts" and its definition under the Policy, the Court holds that there is no basis to conclude that this Policy term incorporates a causal relationship or "but-for" test.  Accordingly, the Court will only examine the record to determine whether there is a "connection" or "link" between the facts or occurrences underlying the alleged "wrongful acts" present in the New Orleans and Baton Rouge Actions.  *See* Black's Law Dictionary, s.v. "nexus" (10th ed. 2014).  The Court's conclusion is supported by other courts that have addressed nearly identical definitions of the term "interrelated wrongful acts" and have not imposed a "but-for" test.  *See ACE Am. Ins. Co. v. Ascend One*

---

economic fruits derived from the New Orleans [Action] where it involved the taking of Camsoft's wireless networking technology." (ECF No. 37-4 at 30–31.)
     Ciber also highlights ¶¶ 120–22, arguing that "any overlap between the two actions is subsumed by Camsoft's disgorgement claim." (ECF No. 48 at 14.) ACE, however, correctly notes that that specific claim is not directed against Ciber, rather it is directed solely towards Active-Southern. (ECF No. 53 at 13.)  Accordingly, the Court concludes that the disgorgement claim in the Baton Rouge Master Petition does not form a basis for finding no overlap between the two actions.

*Corp.*, 570 F. Supp. 2d 789, 798 (D. Md. 2008) (no imposition of "but-for" test or causal relationship when examining identical definition); *KB Home v. St. Paul Mercury Ins. Co.*, 621 F. Supp. 2d 1271, 1277 (S.D. Fla. 2008); *Nat'l Title Agency, LLC v. United Nat'l Ins. Co.*, 2016 WL 1092485, at *3 (D. Utah Mar. 21, 2016) (rejecting "but-for" cause argument); *Old Bridge Mun. Utilities Auth. v. Westchester Fire Ins. Co.,* 2016 WL 4083220, at *4–5 (D.N.J. July 29, 2016).

C. **The New Orleans and Baton Rouge Actions Are Interrelated Wrongful Acts**

As stated above, the parties disagree as to whether or not the New Orleans Action and the Baton Rouge Action are "interrelated wrongful acts." "To determine whether the wrongful acts are interrelated under the Policy, the court must first identify the wrongful acts themselves." *Nat'l Title Agency*, 2016 WL 1092485, at *3. Here, the Court will only analyze the "wrongful acts" of Ciber because only the "wrongful acts" of the insured are relevant for purposes of the interrelation issue before the Court. (*See* ECF No. 48 at 8; ECF No. 53 at 10.)

ACE argues that the two actions are "interrelated" because they are both based on the same events and both involve a "single scheme" (*i.e.*, "wrongful act" under the Policy) in which "Ciber's arrangement with the city employee-controlled subcontractors was the progenitor of the alleged scheme." (ECF No. 47-1 at 8.) Specifically, ACE contends that both actions involve the same core allegations in which Ciber is alleged to have (1) "[e]xploited its relationship with the City of New Orleans to select subcontractors for City projects," (2) "[c]hosen city employee-owned entities as subcontractors for the New Orleans wireless surveillance business," and (3)

13

"circumvented and induced breach of the [July 2004 Contract] to steer wireless surveillance business opportunities to companies with which Ciber was conspiring (primarily the city employee entities)[.]" (*Id*. at 9.)

Ciber disagrees, asserting that the "allegations with respect to Ciber's role [in the New Orleans Action] were very limited and distinct from later allegations made in the [Baton Rouge] Action." (ECF No. 48 at 4.) More specifically, Ciber argues that the "allegations that Ciber failed to make payments to and properly direct the work of Active-[Southern] did not 'cause' Ciber to allegedly conspire to cut Camsoft out of any future business deals, or to enter into kickback agreements, or to market a replica camera system using Camsoft's proprietary information." (*Id*. at 12.)

Based on the broad definition of "interrelated wrongful acts" in the Policy at issue here, as well as the substantially similar factual web surrounding the New Orleans Action and the Baton Rouge Action, the Court is persuaded by ACE's contention that the two proceedings involve a "single scheme"—namely, Ciber's alleged participation in a conspiracy to use city employee-run entities as subcontractors to circumvent the July 2004 Contract and misappropriate the surveillance camera project.

In the Court's view, the allegations in the New Orleans Action and the Baton Rouge Action both arose out of a "single scheme" directed at the developer of the wireless surveillance system (whether Active-Southern alone or in partnership with Camsoft), involving a single contract (the July 2004 Contract), implicating the same transaction or series of transactions involving the surveillance camera project, and seeking a single outcome (to cut out the originators of that system from current and future business dealings). This "single scheme" provides the Court with a sufficient

14

basis upon which to conclude that the New Orleans Action and the Baton Rouge Action share (or are connected and linked by) a common "series of related facts, circumstances, situations, events, transactions or causes." (ECF No. 37-2 at 9.)

Accordingly, the Court concludes that the two actions are "interrelated wrongful acts" that must be treated as a single claim which is "deemed to be first made on the date the earliest of such claims is first made[.]" (*Id*. at 18.) Here, the earlier claim—the New Orleans Action—was made in 2007 when the petition was filed in Louisiana state court. As such, the 2009 Baton Rouge Action is not covered under the Policy because the Policy deems it a claim that was actually made two years prior to the inception of the Policy on July 1, 2009.

## D. No Duty to Defend, No Duty to Indemnify, No Bad Faith

As demonstrated above, ACE correctly determined that the Policy did not afford coverage to Ciber for the Baton Rouge Action because it was an "interrelated wrongful act." Thus, the Court finds that because coverage did not extend, ACE has no duty to defend Ciber.

Further, "[w]here there is no duty to defend, it follows that there can be no duty to indemnify." *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 621 (Colo. 1999). Accordingly, the Court finds that ACE has no duty to indemnify Ciber.

Lastly, because ACE has "no legally cognizable duty to defend or indemnify a claim, [Ciber's] bad faith claim also cannot survive." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 856 F.3d 803, 815 (10th Cir. 2009) (citing *Leprino v. Nationwide Prop. & Cas. Ins. Co.*, 89 P.3d 487, 492 (Colo. Ct. App. 2003)).

### E. Attorneys' Fees

Lastly, ACE contends that "Ciber is liable to ACE for ACE's attorney's fees and costs[.]" (ECF No. 47-1 at 19.) ACE asserts that Colo. Rev. Stat. § 10-3-1116(5) provides "that a court shall award attorney fees to the insurer, 'if the court finds that an action brought pursuant to [Colo. Rev. Stat. § 10-3-1115] was frivolous as provided in [Colo. Rev. Stat. § 13-17-102].'" (*Id.*) In turn, Ciber asserts that "ACE's request for attorney fees is frivolous[.]" (ECF No. 54 at 15.)

A claim is frivolous if "the proponent can present no rational argument based on the evidence or law in support of that claim or defense." *City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 620 (Colo. 2005). In the instant action, while the Court ultimately rejected Ciber's arguments, those arguments were rational and not entirely without merit. It necessarily follows, therefore, that Plaintiff's claims were not frivolous. As a consequence the Court declines to award ACE its attorneys' fees in this case.

## IV. CONCLUSION

For the reasons stated, the Court ORDERS as follows:

1. Defendant's Motion for Judgment on the Pleadings (ECF No. 47) is GRANTED;
2. Plaintiff's Motion for Judgment on the Pleadings (ECF No. 48) is DENIED;
3. Plaintiff's claims against Defendant are DISMISSED WITH PREJUDICE; and
4. The Clerk shall enter final judgment for Defendant and against Plaintiff on all claims, and Defendant shall have its costs.

Dated this 9th day of June, 2017.

BY THE COURT:

William J. Martinez
United States District Judge